# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### FORT MYERS DIVISION

| CARMEKIA KENDRICK | |
| --- | --- |
| Plaintiff, | | Case No.: 2:24-CV- 1080-JES- NPM |
| V. | | |
| CrossCountry Mortgage, LLC, | | |
| Kass Shuler, P.A., Ryan P. Sutton, | | |
| and other Defendants as applicable, | | |
| Defendants. | | |

## COMPLAINT AND COUNTERCLAIM

Comes now Plaintiff, **CARMEKIA KENDRICK**, hereby files this Complaint and Counterclaim against Defendants CrossCountry Mortgage, LLC, Kass Shuler, P.A., and Ryan P. Sutton, alleging the following causes of action and seeking both compensatory and equitable relief.

## INTRODUCTION AND SUMMARY OF CLAIMS

1. This action arises out of Defendants' actions regarding Plaintiff's mortgage, which include engaging in wrongful foreclosure, fraudulent

misrepresentation, unauthorized securitization of Plaintiff's mortgage, identity theft, and infringement on Plaintiff's religious freedom. Plaintiff alleges that these actions have caused severe financial, reputational, and emotional harm and seeks damages and other remedies to address these injuries and prevent further violations by Defendants.

## JURISDICTION AND VENUE

2. I assert that this Court holds jurisdiction over the subject matter of this action, which includes various civil matters such as breach of contract, discrimination, extortion, defamation, improper charges, and violations of children's rights. This authority is established by Florida Statute Section 47.011, which explicitly states that actions shall be brought in the county where the parties reside, where the cause of action accrued, or where the property in litigation is located.

3. Furthermore, I confirm that the venue is undeniably proper in this Court, as I, Carmekia Kendrick reside at 106 E Sugarland Circle, Clewiston Fl 33440, which unmistakably falls within this Court's jurisdiction. The events and actions forming the foundation of this cause of action, as

meticulously outlined in the complaint, transpired within this Court's jurisdiction, in full compliance with the provisions set forth in the Florida Rules of Civil Procedure 1.140.

4. This Court has jurisdiction over this matter because it pertains to real property located in Hendry County, Florida.

5. Venue is proper in this Court pursuant to Florida Statutes, as the property at issue is situated within Hendry County, and the events giving rise to this action occurred within this jurisdiction.

## PARTIES

6. **Plaintiff**: Carmekia Kendrick, an individual residing in Hendry County, Florida, who owns the property that is the subject of this wrongful foreclosure action.

7. **Defendants**: Plaintiff alleges that CrossCountry Mortgage, LLC. ("Defendant"), a corporation headquartered at 2160 Superior Avenue Cleveland, Ohio 44114, actively conducts business in the state of Florida through solicitation, lending practices, and servicing of mortgage loans to residents of this state. Defendant is registered to conduct business in Florida. By engaging in regular and systematic commercial activities,

Defendant purposefully availed itself of the privilege of conducting business within the jurisdiction of this Court.

8. Plaintiff further alleges that the Defendant's actions, including the origination, servicing, and administration of the alleged mortgage loan at issue, directly impact the Plaintiff, who resides in Florida.

   **CrossCountry Mortgage, LLC**: A foreign limited liability company involved in the origination and securitization of Plaintiff's mortgage and the foreclosure proceedings at issue.

   **Kass Shuler, P.A.**: A Florida profit corporation and law firm representing CrossCountry Mortgage, LLC, in the foreclosure proceedings.

   **Representation in the Jurisdiction**: Kass Shuler, P.A., while based in Tampa, FL, is representing CrossCountry Mortgage, LLC. in matters within Hendry County. Their actions on behalf of their client in this jurisdiction are enough to establish a legal presence under Florida's long-arm statute (Florida Statutes § 48.193).

   **Doing Business in Hendry County**: By filing documents, appearing in court, or otherwise representing CrossCountry Mortgage in Hendry County,

Kass Shuler, P.A. is conducting business in the county. This satisfies the requirements for venue and jurisdiction.

**Venue Justification:** The venue is appropriate in Hendry County because the underlying transactions or occurrences that gave rise to the lawsuit happened there. Kass Shuler, P.A.'s involvement links them to the county as representatives actively working on a case in this location.

**Ryan P. Sutton**: An attorney with Kass Shuler, P.A., who has directly participated in actions contributing to the claims asserted herein.

### STATEMENT OF FACTS

9. **Mortgage Origination and Terms:** Plaintiff's mortgage was originally issued by Defendants under terms that were not fully disclosed, in direct violation of the Truth in Lending Act (TILA), 15 U.S.C. § 1601 et seq. TILA mandates that lenders must provide clear and accurate disclosure of loan terms, including the annual percentage rate, total payment obligations, and any potential risks associated with the loan. Specifically, 15 U.S.C. § 1638 requires lenders to disclose the "finance charge" and "total payments" accurately and transparently. In this instance, Defendants failed to inform Plaintiff of critical details, including:

The fact that Plaintiff's mortgage would be securitized, creating financial products for profit, without Plaintiff's knowledge or consent, violating both the transparency and consumer protection principles of TILA.

10.    The potential for Plaintiff's loan to be traded in secondary markets, making the loan subject to fluctuating market conditions and exposing Plaintiff to undisclosed risks.

11.    The Supreme Court in Beach v. Ocwen Fed. Bank, 523 U.S. 410 (1998),[1] reinforced that TILA was designed to provide consumers with meaningful disclosures to protect against unfair lending practices. Defendants' failure to meet these TILA requirements constitutes fraudulent misrepresentation and denies Plaintiff the opportunity to make an informed decision regarding the mortgage.

12.    **Securitization and Unauthorized Profit:** Without obtaining Plaintiff's consent, Defendants sold or traded Plaintiff's mortgage in secondary markets, effectively treating Plaintiff's debt as a financial asset. This

process of securitization involved the packaging and selling of

---

[1] Beach v. Ocwen Fed. Bank, 523 U.S. 410 (1998) In Beach, the United States Supreme Court addressed the Truth in Lending Act (TILA) and the rights it grants to borrowers. The case clarified that TILA's purpose is to protect consumers by requiring lenders to disclose essential information about loans, including finance charges, terms, and potential risks. The Court held that borrowers must receive these disclosures before a loan is finalized, allowing them to make informed financial decisions. This case is central to your Fraudulent Misrepresentation and Violation of TILA claim. Defendants allegedly failed to disclose critical loan information, such as the securitization of the mortgage, thereby concealing potential

risks and terms of the loan. Beach supports your argument that TILA mandates clear and honest disclosures, and failure to provide these disclosures constitutes a violation, entitling you to damages.

mortgage-backed securities (MBS), allowing Defendants to profit

substantially while using Plaintiff's identity and credit history to create

these securities. This unauthorized use of Plaintiff's identity and financial

information for profit violates: 18 U.S.C. § 1028 (Identity Theft), as

Defendants used Plaintiff's personal and financial information without

consent to facilitate transactions and derive profit. 15 U.S.C. § 1692e of

the Fair Debt Collection Practices Act (FDCPA), which prohibits "false,

deceptive, or misleading representation" in the collection or handling of a

debt. By failing to inform Plaintiff of the securitization, Defendants misled

Plaintiff regarding the true nature of the debt obligation.

13.    The separation of the mortgage from the promissory note, as part of

the securitization process, invalidated Defendants' standing to collect on

the debt. Under Florida law, to initiate a foreclosure, the foreclosing

party must hold both the mortgage and the promissory note (see

Yvanova v. New Century Mortgage Corp., 62 Cal.4th 919, 930 (2016);

U.S. Bank

Nat'l Ass'n v. Ibanez, 458 Mass. 637, 649 (2011)).[2] By severing these

---

[2] Yvanova v. New Century Mortgage Corp., 62 Cal.4th 919 (2016) In Yvanova, the California Supreme Court held that a party cannot foreclose on a property unless they have a legitimate ownership interest in the mortgage. Specifically, the case involved the question of whether a borrower could challenge a foreclosure initiated by an entity that did not hold the mortgage at the time of foreclosure. The court ruled that if a mortgage is assigned or transferred improperly, the foreclosing party lacks the standing

necessary to proceed with foreclosure. This case supports your Wrongful Foreclosure claim by establishing that if Defendants transferred or securitized your mortgage and lost ownership of the mortgage and promissory note, they also lost their legal right to foreclose. In your case, because

documents, Defendants forfeited any right to enforce the mortgage through foreclosure. Florida courts have ruled that such a separation voids the ability to foreclose, rendering any such action by Defendants legally baseless and procedurally invalid.

14. **Foreclosure Actions:** Despite having relinquished any legitimate interest in the mortgage, Defendants initiated foreclosure proceedings against Plaintiff's property. At the time of this foreclosure action, Defendants no longer held the legal right to enforce the mortgage debt, as they had previously sold and separated the mortgage and promissory note. This action violated Florida statutes, including Fla. Stat. § 673.3011, which requires a party seeking to enforce a negotiable instrument to be the holder of the instrument.

15. Furthermore, under Fla. Stat. § 702.015, the foreclosing party must verify their standing and ownership of the mortgage to initiate foreclosure. The initiation of these foreclosure proceedings by

---

Defendants allegedly transferred the mortgage through securitization, they may no longer possess the standing to foreclose, making the foreclosure wrongful under the principles outlined in Yvanova. U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637 (2011) In Ibanez, the Massachusetts Supreme Judicial Court held that a foreclosure was void when the party conducting the foreclosure could not prove ownership of the mortgage at the time of the foreclosure sale. The court emphasized that foreclosing parties must hold both the mortgage and the promissory note to have legal standing. Without these documents, a party lacks the authority to foreclose. This case also reinforces your Wrongful Foreclosure claim, as it demonstrates the necessity for a foreclosing party to hold both the mortgage and note. If Defendants in your case transferred the mortgage or promissory note as part of the securitization process, they would lose standing to enforce the mortgage through foreclosure, making their foreclosure action legally invalid.

Defendants, in violation of Florida's requirements for standing, constitutes wrongful foreclosure. Defendants' actions have directly caused significant financial loss to Plaintiff, including:

i.    The loss of accumulated property equity, which Plaintiff had invested over time and which was wrongfully stripped through the foreclosure process.

ii.    Additional economic opportunities that Plaintiff could have pursued had the property remained under Plaintiff's ownership.

16.    In Jallali v. Knightsbridge Vill. Homeowners Ass'n, Inc., 61 So. 3d 1196, 1200 (Fla. 4th DCA 2011),[3] the Florida court emphasized the importance of standing in foreclosure actions, underscoring that a foreclosure initiated without proper standing is legally invalid. This principle applies directly to the actions of Defendants, who initiated foreclosure without fulfilling statutory standing requirements.

---

[3] Jallali v. Knightsbridge Vill. Homeowners Ass'n, Inc., 61 So. 3d 1196, 1200 (Fla. 4th DCA 2011) In Jallali, the Florida Fourth District Court of Appeal held that a foreclosure is void if the party initiating it does not have legal standing. This case involved a homeowners' association attempting to foreclose on a property after a mortgage holder had already obtained a foreclosure judgment. The court ruled that for any party to initiate a valid foreclosure action, they must hold a proper interest in the property at the time of foreclosure, emphasizing the importance of having a clear chain of ownership and the required documents to support their claim. This case supports your Wrongful Foreclosure claim by establishing that a foreclosure is void if the foreclosing party lacks standing at the time the foreclosure is initiated. In your case, Defendants allegedly securitized and transferred your mortgage, which may have severed their legal interest in the property and therefore stripped them of the standing necessary to foreclose. Jallali underscores that initiating a foreclosure without proper legal standing is invalid, supporting your argument that Defendants' foreclosure action was wrongful.

17.    **Impact on Plaintiff:** As a result of Defendants' unlawful actions, Plaintiff has experienced extensive harm, including financial loss, reputational damage, emotional distress, and infringement on religious freedoms. Specifically:

i.    **Financial Losses**: Plaintiff has been deprived of significant property equity and has incurred legal costs, lost time, and additional expenses related to defending against an unlawful foreclosure. The cumulative financial loss is substantial, considering the property's potential appreciation value and the equity Plaintiff had accrued.

ii.    **Reputational Damage**: Defendants' foreclosure action led to adverse entries on Plaintiff's credit report, damaging Plaintiff's reputation and financial standing, as defined under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq. The FCRA mandates accuracy in credit reporting, and Defendants' actions directly harmed Plaintiff's creditworthiness by disseminating false information to credit bureaus.

iii.    **Emotional Distress**: Defendants' extreme and outrageous conduct, including harassment and unjustified foreclosure actions, inflicted severe emotional distress on Plaintiff. Under Molien v. Kaiser

12

Foundation Hospitals, 27 Cal.3d 916 (1980)[4], emotional distress caused by malicious and reckless actions entitles the affected individual to damages. Plaintiff has suffered psychological and physical impacts from the continuous stress of losing their home unjustly.

iv. **Infringement on Religious Freedoms**: The foreclosure actions disrupted Plaintiff's ability to practice religious beliefs freely, a violation of Plaintiff's rights under 42 U.S.C. § 1983, which protects individuals from state actors' interference with religious freedom. Plaintiff's religious practices are deeply tied to the home environment, and the wrongful eviction by the Defendants has compromised Plaintiff's right to religious observance.

18. These compounded harms have not only jeopardized Plaintiff's financial stability but have also inflicted lasting damage on Plaintiff's well-being, familial stability, and ability to maintain religious practices. Plaintiff seeks remedies for these significant losses, including damages

---

[4] Molien v. Kaiser Foundation Hospitals, 27 Cal.3d 916 (1980) In Molien, the California Supreme Court recognized that extreme and outrageous conduct that intentionally or recklessly causes severe emotional distress is grounds for an Intentional Infliction of Emotional Distress (IIED) claim. The court ruled that the affected party could recover damages for mental suffering caused by another's intentional or reckless conduct. This case supports your Intentional Infliction of Emotional Distress (IIED) claim. Defendants allegedly engaged in extreme and outrageous conduct by attempting to seize your property without legal grounds, misrepresenting key details, and harassing you, causing you severe emotional distress. Molien supports your argument that Defendants' behavior, which caused you substantial emotional harm, qualifies as IIED and entitles you to damages for mental anguish and distress.

to account for financial, emotional, and reputational harm, along with relief to prevent further infringement by Defendants.

## CAUSES OF ACTION

### Count I: Wrongful Foreclosure

19.    Plaintiff alleges that Defendants unlawfully initiated foreclosure proceedings without holding the necessary legal standing to do so. Defendants engaged in a series of actions that effectively relinquished any right to enforce the mortgage, including the securitization and transfer of the mortgage to third-party entities in the secondary market.

20.    Under Florida law, a party seeking to foreclose on a property must possess both the mortgage and the promissory note to establish standing, as mandated by Fla. Stat. § 673.3011. This statute specifies that only the "holder" of a negotiable instrument, or a party in possession of the instrument with the rights of a holder, has the authority to enforce it. By separating the mortgage from the note, Defendants effectively nullified their standing to foreclose, as the mortgage and note must remain united for any foreclosure action to be valid.

**21.** In Yvanova v. New Century Mortgage Corp., 62 Cal.4th 919, 930

(2016)[5], the California Supreme Court held that a party that has sold or

assigned a mortgage, thereby relinquishing its interest, cannot

subsequently claim the right to foreclose on the property. Similarly,

in U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 649 (2011)[6], the

Massachusetts Supreme Judicial Court ruled that a foreclosure is

wrongful when the party initiating the foreclosure lacks a legitimate

ownership interest in the mortgage. These cases establish the principle

that a foreclosure initiated without legal standing is invalid and

constitutes wrongful foreclosure.

---

[5] Yvanova v. New Century Mortgage Corp., 62 Cal.4th 919 (2016) In Yvanova, the California Supreme Court held that a party cannot foreclose on a property unless they have a legitimate ownership interest in the mortgage. Specifically, the case involved the question of whether a borrower could challenge a foreclosure initiated by an entity that did not hold the mortgage at the time of foreclosure. The court ruled that if a mortgage is assigned or transferred improperly, the foreclosing party lacks the standing necessary to proceed with foreclosure. This case supports your Wrongful Foreclosure claim by establishing that if Defendants transferred or securitized your mortgage and lost ownership of the mortgage and promissory note, they also lost their legal right to foreclose. In your case, because Defendants allegedly transferred the mortgage through securitization, they may no longer possess the standing to foreclose, making the foreclosure wrongful under the principles outlined in Yvanova.

[6] U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 649 (2011) In Ibanez, the Massachusetts Supreme Judicial Court ruled that a foreclosure is void if the party foreclosing cannot prove that they hold both the mortgage and the promissory note at the time of the foreclosure. The case emphasized that the foreclosing party must demonstrate a clear and valid chain of title, and that any assignments or transfers must be legally sound and properly documented. Without possession of both the mortgage and the note, the foreclosing party lacks the necessary standing, making the foreclosure action invalid. This case further supports your Wrongful Foreclosure claim, as it establishes that a party must have legal possession of both the mortgage and the note to foreclose. If Defendants securitized and transferred your mortgage or note, they would lack standing to foreclose because they no longer hold the unified interest required by law. Ibanez reinforces your argument that Defendants' foreclosure is invalid if they cannot demonstrate an unbroken chain of title and possession of both the mortgage and the note, thereby supporting your position that the foreclosure action is wrongful.

22.   Plaintiff further contends that Defendants violated Fla. Stat. §

702.015, which requires any party filing a foreclosure action to verify

its right to enforce the mortgage. This verification includes establishing

ownership of the mortgage and note at the time the foreclosure is

initiated. By initiating foreclosure without holding a lawful interest in the

mortgage, Defendants acted unlawfully, directly resulting in wrongful

foreclosure.

23.   The wrongful foreclosure caused Plaintiff significant financial and

emotional harm, including the loss of accumulated equity in the property,

the costs associated with defending against an improper foreclosure,

and reputational damage resulting from public foreclosure notices.

Plaintiff seeks damages to compensate for these financial and emotional

injuries and requests an order declaring the foreclosure action void and

restoring Plaintiff's property rights.

## Count II: Fraudulent Misrepresentation and Violation of the Truth in Lending Act (TILA)

24.   Plaintiff asserts that Defendants engaged in fraudulent

misrepresentation by failing to provide essential disclosures required

under the Truth in Lending Act (TILA), 15 U.S.C. § 1601 et seq., during

the mortgage origination process. TILA mandates that lenders must

clearly and accurately disclose material terms of a loan, including the

finance charges, annual percentage rate, and total payments, allowing

borrowers to make informed decisions. Defendants failed to meet these

requirements, as outlined below.

25.    **Non-Disclosure of Securitization**: Defendants failed to disclose

that Plaintiff's mortgage would be securitized and potentially sold in the

secondary market, making the loan subject to the fluctuations and risks

associated with market trading. TILA, specifically 15 U.S.C. §

1638(a)(4), requires the disclosure of the "finance charge" and the true

nature of the loan obligation. By withholding information about the

securitization and sale of the loan, Defendants prevented Plaintiff from

understanding the full scope and nature of the financial obligation,

including the increased risk associated with securitized loans.

26.    **Failure to Disclose Accurate Terms of the Loan**: Defendants

misrepresented the nature of the transaction by concealing that the

mortgage was structured in a way that would result in significant profits

for Defendants through secondary market transactions. 15 U.S.C. §

1639(b) emphasizes that lenders must provide disclosures in a timely

manner before consummation of the loan. Defendants' failure to accurately represent these material terms violated Plaintiff's right to full disclosure, which is central to TILA's purpose of promoting "informed use of credit."

27. **Failure to Provide Required Disclosures**: TILA, through 15 U.S.C. § 1640, provides consumers with the right to seek damages if lenders fail to provide required disclosures. In Beach v. Ocwen Fed. Bank, 523 U.S. 410 (1998),[7] the U.S. Supreme Court emphasized the role of TILA in ensuring transparent lending practices and allowing consumers the ability to rescind loans based on inadequate disclosure. By failing to disclose key terms, including the fact that the mortgage would be used as an investment instrument rather than a straightforward home loan, Defendants deprived Plaintiff of the transparency required under TILA and impaired Plaintiff's ability to make an informed decision.

28. Defendants' omissions constitute fraudulent misrepresentation as they misled Plaintiff about the nature of the transaction. Florida law

---

[7] Beach v. Ocwen Fed. Bank, 523 U.S. 410 (1998) In Beach, the United States Supreme Court addressed the Truth in Lending Act (TILA) and the rights it grants to borrowers. The case clarified that TILA's purpose is to protect consumers by requiring lenders to disclose essential information about loans, including finance charges, terms, and potential risks. The Court held that borrowers must receive these disclosures before a loan is finalized, allowing them to make informed financial decisions. This case is central to your Fraudulent Misrepresentation and Violation of TILA claim. Defendants allegedly failed to disclose critical loan information, such as the securitization of the mortgage, thereby concealing potential risks and terms of the loan. Beach supports your argument that TILA mandates clear and honest disclosures, and failure to provide these disclosures constitutes a violation, entitling you to damages.

defines fraudulent misrepresentation as a false statement concerning a material fact, known to be false by the party making it, made with the intent to induce reliance, which the other party relies upon to their detriment. Here, Defendants knowingly concealed the true nature of the loan to induce Plaintiff into entering a mortgage agreement under false pretenses, resulting in severe financial consequences.

29. **Damages for Count II:** Due to Defendants' fraudulent misrepresentation and TILA violations, Plaintiff has suffered significant financial losses, including the costs of defending against foreclosure, lost equity in the property, and the emotional toll of dealing with the consequences of an improperly originated loan. Plaintiff seeks statutory damages under 15 U.S.C. § 1640(a), which provides for actual damages, attorney's fees, and additional damages in cases of willful non-compliance with TILA's disclosure requirements.

30. Plaintiff requests an award for the financial harm caused by Defendants' deceptive practices and an order for Defendants to correct any errors in the origination and representation of the loan terms. Additionally, Plaintiff requests that the Court issue a declaratory judgment confirming the Defendants' failure to adhere to TILA and

requiring full disclosure of all loan terms to prevent future similar misrepresentations.

### Count III: Securities Fraud and Unauthorized Use of Identity

31.    Plaintiff alleges that Defendants engaged in securities fraud and unauthorized use of Plaintiff's identity by selling Plaintiff's mortgage in the secondary market without Plaintiff's consent, generating substantial profits in violation of federal law.

32.    **Securities Fraud under 18 U.S.C. § 1348:** 18 U.S.C. § 1348 defines securities fraud as any scheme to defraud or obtain money through false pretenses in connection with the sale or purchase of securities. By securitizing Plaintiff's mortgage and selling it as part of mortgage-backed securities (MBS), Defendants treated the mortgage as a financial instrument, profiting from it as a security. This process involved bundling the mortgage into MBS and trading it, without disclosing to Plaintiff that the mortgage would be used in this way. This scheme to misappropriate Plaintiff's loan as a profit-generating security violated 18 U.S.C. § 1348(1), which specifically prohibits schemes intending to defraud in the handling or sale of securities.

**33.** The Supreme Court in Hazel-Atlas Glass Co. v. Hartford-Empire
Co., 322 U.S. 238 (1944)[8], upheld claims for damages due to
fraudulent activities that harm another party's financial interests. The
decision underscores that fraudulent use of assets to generate profits,
especially without the asset owner's knowledge or consent, is a
violation of securities law principles, entitling the affected party to relief
for the unlawful conversion of their financial resources.

**34.    Unauthorized Use of Identity under 18 U.S.C. § 1028:** Defendants'
actions also constitute identity theft under 18 U.S.C. § 1028, which
prohibits the unauthorized use of another's identity for financial gain. By
securitizing Plaintiff's mortgage—using Plaintiff's personal financial
information and identity as the basis for creating MBS—Defendants
fraudulently utilized Plaintiff's identity to profit in secondary markets.
Under 18 U.S.C. § 1028(a)(7), it is illegal to knowingly transfer or use
any means of identification of another person with intent to commit fraud
or obtain financial gain. Defendants leveraged Plaintiff's credit profile

---

[8] Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944) Hazel-Atlas is a Supreme Court case establishing that fraudulent actions intended to secure financial benefits at the expense of another party can entitle the injured party to relief. In this case, the Court ruled that fraudulent actions, such as using false information to gain financial advantages, warrant restitution and damages. This case supports your Securities Fraud and Unauthorized Use of Identity claim. Defendants allegedly securitized your mortgage, profiting from it by using your identity and mortgage information in secondary markets without authorization. Hazel-Atlas reinforces the principle that profiting through fraud or deception constitutes grounds for damages, making it relevant to your claim for restitution of profits gained through unauthorized use of your mortgage and identity.

and financial obligations without permission, thereby violating federal law by fraudulently benefitting from Plaintiff's personal information.

**35.** The Supreme Court's decision in Doe v. Chao, 540 U.S. 614 (2004)[9], addresses the unauthorized use of a person's identity, affirming that individuals harmed by identity theft are entitled to damages. Defendants' unauthorized actions exposed Plaintiff's identity to risk in the secondary market, causing financial injury and reputational harm, in clear violation of 18 U.S.C. § 1028.

## Count IV: Defamation and Violation of the Fair Credit Reporting Act (FCRA)

**36.** Plaintiff asserts that Defendants knowingly reported false information regarding Plaintiff's foreclosure to credit bureaus, resulting in reputational harm and lowering Plaintiff's credit score. Defendants' actions constitute defamation and also violate the Fair Credit Reporting Act (FCRA), which mandates that any information reported to consumer credit agencies be accurate and truthful.

---

[9] Doe v. Chao, 540 U.S. 614 (2004) In Doe v. Chao, the U.S. Supreme Court addressed unauthorized use of personal information, ruling that individuals harmed by unauthorized use of their identity are entitled to seek relief. The decision emphasized that damages are warranted when personal identifying information is used without consent for unauthorized purposes. This case supports your Identity Theft and Unauthorized Profit from Securitization claim. Defendants allegedly used your identity and financial information without authorization to profit through secondary market transactions. Doe reinforces the principle that individuals can claim damages when their identity is used without consent, directly supporting your argument for compensation due to unauthorized profit from securitization involving your personal information.

37.  **Violation of FCRA under 15 U.S.C. § 1681s-2(a):** The Fair Credit

Reporting Act, particularly under 15 U.S.C. § 1681s-2(a), requires

entities furnishing information to consumer reporting agencies to ensure

that all information provided is accurate. Defendants reported Plaintiff's

foreclosure status to credit bureaus despite lacking legal grounds to

foreclose, thus misrepresenting Plaintiff's financial standing. This

inaccurate reporting violated the FCRA's mandate for accuracy, directly

affecting Plaintiff's creditworthiness and causing financial harm.

38.  Under 15 U.S.C. § 1681n and 15 U.S.C. § 1681o, FCRA provides

individuals the right to seek damages for both negligent and willful

non-compliance. These sections enable claims against furnishers who

have reported incorrect information, entitling individuals harmed by such

inaccuracies to compensation. The precedent set in Davidson v. Capital

One Bank, 2011 WL 3443953 (E.D. Mich. 2011)[10], demonstrates that

---

[10] Davidson v. Capital One Bank, 2011 WL 3443953 (E.D. Mich. 2011) In Davidson, the court recognized that inaccurate information reported to credit bureaus could form the basis for a defamation claim, particularly if the misinformation harms an individual's reputation and creditworthiness. The case established that reporting false information, especially knowingly or negligently, can constitute defamation under the Fair Credit Reporting Act (FCRA) and common law. This case supports your Defamation and Violation of the Fair Credit Reporting Act (FCRA) claim. Defendants allegedly reported false foreclosure information to credit bureaus, damaging your credit score and reputation. Davidson provides legal precedent that inaccurate reporting is actionable and can lead to defamation claims when it causes reputational harm, as in your situation where Defendants' actions harmed your credit and financial reputation.

inaccurate information reported to credit agencies can constitute a basis for defamation claims when it causes reputational harm.

39.    **Defamation:** Defendants' dissemination of inaccurate foreclosure information about Plaintiff to credit bureaus also constitutes defamation under Florida law. Defamation involves the communication of false information that harms an individual's reputation when made publicly available to third parties. In this instance, Defendants' inaccurate reports concerning Plaintiff's foreclosure status were transmitted to credit agencies, causing demonstrable reputational harm and affecting Plaintiff's financial opportunities.

40.    Fla. Stat. § 559.72 further prohibits creditors from knowingly providing false information to third parties, including consumer reporting agencies. By failing to verify the foreclosure status accurately and intentionally reporting it to the credit bureaus, Defendants engaged in defamatory conduct. This inaccurate information diminished Plaintiff's reputation caused substantial financial detriment, and directly impacted Plaintiff's ability to secure future credit opportunities.

**Count V: Intentional Infliction of Emotional Distress (IIED)**

**41.** Plaintiff alleges that Defendants engaged in conduct so extreme and outrageous that it exceeded all reasonable bounds of decency, deliberately or recklessly causing Plaintiff severe emotional distress. Defendants knowingly initiated foreclosure proceedings against Plaintiff's property without legal basis, harassed Plaintiff, and misrepresented critical aspects of the mortgage, fully aware that these actions would result in significant psychological and emotional harm to Plaintiff.

**42.** In Molien v. Kaiser Foundation Hospitals, 27 Cal.3d 916 (1980)[11], the court held that extreme and outrageous conduct that directly causes severe emotional distress entitles the affected party to damages for IIED. To establish a claim for IIED under Florida law, Plaintiff must demonstrate that: (1) the Defendants' conduct was intentional or reckless; (2) the conduct was outrageous and beyond the bounds of decency; (3) the conduct caused emotional distress; and (4) the distress was severe. Here, Defendants' actions in wrongfully attempting to seize

---

[11] Molien v. Kaiser Foundation Hospitals, 27 Cal.3d 916 (1980) In Molien, the California Supreme Court recognized that extreme and outrageous conduct that intentionally or recklessly causes severe emotional distress is grounds for an Intentional Infliction of Emotional Distress (IIED) claim. The court ruled that the affected party could recover damages for mental suffering caused by another's intentional or reckless conduct. This case supports your Intentional Infliction of Emotional Distress (IIED) claim. Defendants allegedly engaged in extreme and outrageous conduct by attempting to seize your property without legal grounds, misrepresenting key details, and harassing you, causing you severe emotional distress. Molien supports your argument that Defendants' behavior, which caused you substantial emotional harm, qualifies as IIED and entitles you to damages for mental anguish and distress.

Plaintiff's property and utilizing harassing tactics during the foreclosure

process qualify as "outrageous" and "extreme," meeting the high

threshold required for IIED claims.

43.    Defendants' actions caused Plaintiff to experience anxiety,

humiliation, and mental anguish as a result of the impending loss of

Plaintiff's home. The reckless disregard for Plaintiff's rights and the

intent to cause distress as a means of coercing compliance with a

baseless foreclosure action exacerbated the harm inflicted on Plaintiff.

Under Restatement (Second) of Torts § 46, conduct that intentionally

or recklessly causes severe emotional distress to another is

actionable, and Plaintiff's case falls squarely within this doctrine.

Defendants' behavior inflicted lasting psychological harm and

emotional trauma on Plaintiff, for which Plaintiff seeks appropriate

damages.

**Count VI: Violation of Religious Freedom and Due Process**

44.    Defendants' actions infringed upon Plaintiff's religious beliefs and

rights to due process, as protected by the First and Fourteenth

Amendments to the United States Constitution and actionable under

42 U.S.C. § 1983. Defendants pressured Plaintiff to acknowledge a

debt that is fundamentally at odds with Plaintiff's religious convictions,

particularly Plaintiff's beliefs in truth, integrity, and financial accountability,

all of which are integral to Plaintiff's religious practice. This coercive

conduct compelled Plaintiff to act in ways that contravene Plaintiff's sincere

religious beliefs, infringing upon Plaintiff's right to free exercise of religion.

45.   **Violation of Religious Freedom:** Under 42 U.S.C. § 1983,

individuals are protected from actions by others that infringe on their

federally protected rights, including the free exercise of religion. The

Supreme Court in Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682

(2014),[12] held that individuals and entities have the right to practice their

religious beliefs free from government or corporate coercion. Here,

Defendants' coercive tactics forced Plaintiff into a position where

compliance would have violated Plaintiff's religious principles. Plaintiff's

religious beliefs mandate honesty and integrity, which conflicts with

acknowledging or acquiescing to a debt not lawfully owed. Defendants'

---

[12] Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682 (2014) In Burwell, the U.S. Supreme Court held that individuals and corporations have the right to practice their religious beliefs without undue interference. The decision emphasized that forcing someone to act in a way that violates their religious beliefs infringes upon their right to freedom of religion under the First Amendment. This case supports your Violation of Religious Freedom and Due Process claim. You assert that Defendants pressured you into acknowledging a debt that conflicts with your religious beliefs regarding truth and integrity. Burwell supports your position that actions infringing upon your religious convictions violate your First Amendment rights, and you have grounds to seek relief when corporate actions pressure you to act against your religious principles.

disregard for Plaintiff's religious beliefs resulted in a direct violation of Plaintiff's First Amendment rights.

46.    **Violation of Due Process:** Additionally, Defendants' actions violated Plaintiff's right to due process under the Fourteenth Amendment. The Fourteenth Amendment requires that individuals be given fair treatment through the normal judicial process, particularly when facing actions that may deprive them of property. By initiating wrongful foreclosure actions without valid legal standing, Defendants denied Plaintiff procedural due process rights. Defendants' improper use of foreclosure proceedings disregarded the safeguards inherent in due process, ultimately infringing upon Plaintiff's constitutionally protected rights to a fair and just legal process.

47.    Plaintiff alleges that Defendants' actions, including the improper initiation of foreclosure and their failure to provide Plaintiff with legally required notices and disclosures, constituted a deprivation of Plaintiff's property rights without due process. This wrongful foreclosure not only disregarded procedural protections but also contravened Plaintiff's deeply held religious beliefs, causing further psychological and emotional harm.

**Count VII: Identity Theft and Unauthorized Profit from Securitization**

48.    Plaintiff alleges that Defendants engaged in identity theft and unauthorized use of Plaintiff's personal and financial information to generate profit through secondary market transactions, in violation of federal statute 18 U.S.C. § 1028. This statute prohibits the unauthorized use of another person's identity to gain value or property, and it criminalizes the intentional use of personal identifying information for fraudulent financial gain.

49.    **Identity Theft under 18 U.S.C. § 1028:** 18 U.S.C. § 1028 defines identity theft as the fraudulent and unauthorized use of another individual's personal identifying information with intent to defraud or gain financially. By securitizing Plaintiff's mortgage—essentially using Plaintiff's identity to create a financial instrument for profit in the secondary market—Defendants unlawfully capitalized on Plaintiff's personal information and financial identity. This fraudulent appropriation of Plaintiff's identity contravenes federal law and exposes Plaintiff to the risks associated with having personal information traded and monetized without consent.

50.     The Supreme Court's decision in Doe v. Chao, 540 U.S. 614

(2004)[13], supports the principle that individuals whose personal

identifying information is used without their consent are entitled to seek

relief for damages arising from identity theft. By monetizing Plaintiff's

identity and converting Plaintiff's mortgage into mortgage-backed

securities, Defendants illegally profited from Plaintiff's personal

information without authorization. This misuse of Plaintiff's identity as a

means of generating profit without consent meets the elements required

to establish a claim under federal identity theft statutes.

51.     **Unauthorized Profit from Securitization:** Plaintiff further asserts

that Defendants' use of Plaintiff's identity for securitization resulted in

substantial financial gain, none of which was disclosed to or consented

by Plaintiff. By converting Plaintiff's mortgage into a security and trading

it, Defendants effectively used Plaintiff's identity and credit history as an

asset to be marketed and sold in the financial markets. This

unauthorized use constitutes both a violation of federal law and an

---

[13] Doe v. Chao, 540 U.S. 614 (2004) In Doe v. Chao, the U.S. Supreme Court addressed unauthorized use of personal information, ruling that individuals harmed by unauthorized use of their identity are entitled to seek relief. The decision emphasized that damages are warranted when personal identifying information is used without consent for unauthorized purposes. This case supports your Identity Theft and Unauthorized Profit from Securitization claim. Defendants allegedly used your identity and financial information without authorization to profit through secondary market transactions. Doe reinforces the principle that individuals can claim damages when their identity is used without consent, directly supporting your argument for compensation due to unauthorized profit from securitization involving your personal information.

ethical breach, as Defendants' actions profited from Plaintiff's identity without rightful consent or compensation.

**52.**    Plaintiff contends that Defendants' unauthorized use of Plaintiff's identity was a calculated strategy to increase profits, leveraging Plaintiff's mortgage for financial gain while disregarding Plaintiff's rights and exposing Plaintiff to risks associated with securitization. This unauthorized and fraudulent use of Plaintiff's personal information for profit is a violation of 18 U.S.C. § 1028 and has caused Plaintiff significant harm, for which Plaintiff seeks redress.

**Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief against Defendants, jointly and severally:

A. **Compensatory Damages**: Award Plaintiff compensatory damages for the financial losses suffered due to Defendants' wrongful conduct, including but not limited to:

i.    The loss of equity in Plaintiff's property as a result of the wrongful foreclosure;

ii.  Financial damages incurred due to fraudulent misrepresentation, including all fees, costs, and other economic losses associated with the mortgage and foreclosure process;

iii.  Damages for emotional distress, mental anguish, and physical impacts related to the intentional infliction of emotional distress caused by Defendants' extreme and outrageous conduct.

**B. Restitution of Profits**: Order Defendants to disgorge and pay to Plaintiff all profits gained from the unauthorized securitization, sale, or other transactions involving Plaintiff's mortgage, including all revenue obtained through the use of Plaintiff's identity in secondary market transactions.

**C. Declaratory Relief**:

i.  Issue a declaratory judgment affirming that Defendants acted without legal standing in their foreclosure efforts, rendering the foreclosure action void;

ii.  Declare that Defendants violated Plaintiff's rights under the Truth in Lending Act (TILA), the Fair Credit Reporting Act (FCRA), and relevant Florida statutes by failing to provide accurate disclosures and misreporting foreclosure information;

    iii.    Declare that Defendants' actions constitute securities fraud, identity theft, defamation, and intentional infliction of emotional distress, warranting relief under applicable federal and state laws.

**D. Injunctive Relief**:

    i.    Enjoin Defendants from further wrongful foreclosure actions or attempts to enforce any rights under the mortgage that Defendants no longer lawfully possess;

    ii.    Enjoin Defendants from reporting false or misleading information regarding Plaintiff's mortgage or foreclosure status to any credit reporting agency;

    iii.    Enjoin Defendants from any future unauthorized use of Plaintiff's identity in connection with financial transactions, securitization, or other secondary market activities.

**E. Removal of Adverse Credit Information**: Order Defendants to remove all adverse entries related to the wrongful foreclosure from Plaintiff's credit report and to correct any other inaccuracies resulting from Defendants' actions.

**F. Punitive Damages**: Award punitive damages to Plaintiff to punish Defendants for their willful, malicious, and reckless disregard for

Plaintiff's rights, and to deter similar conduct by Defendants and others in the future.

G. **Attorney's Fees and Costs**: Award Plaintiff reasonable attorney's fees and costs of this action as permitted by law, including any costs associated with bringing this suit and remedying the harm caused by Defendants' actions.

H. **Pre- and Post-Judgment Interest**: Award Plaintiff pre-judgment and post-judgment interest on all sums awarded as allowed by law.

I. **Other Relief**: Grant any other relief that the Court deems just and proper under the circumstances.

J. **Jury Demand and Jurisdiction**

   i.   **Jurisdictional Statement**: The Court has proper jurisdiction over this matter, as the amount in controversy exceeds $75,000, satisfying the requirements of federal diversity jurisdiction under 28 U.S.C. § 1332(a). Plaintiff alleges damages of $50 million, supported by a securitization audit indicating that Defendants profited approximately $30 million from unauthorized transactions conducted in Plaintiff's name. This significant financial impact and the nature of Plaintiff's claims establish the grounds for substantial relief.

ii.    **Jury Demand**: Plaintiff hereby demands a trial by jury on all issues

triable by jury, as provided under the Seventh Amendment to the

United States Constitution and applicable Florida law.

**Executed on this 22nd day of November 2024.**

**Respectfully Submitted by,**

106 E Sugarland Circle
Clewiston, FL 33440

561-574-2700

**Verification**

I, Carmekia Kendrick, declare under penalty of perjury under the laws of

the State of Florida that I am the Plaintiff in this action, and that I have read

the foregoing Complaint and know the contents thereof. The statements

made in this Complaint are true and correct to the best of my knowledge,

information, and belief.

**Executed on this 22ND day of November 2024.**

**Respectfully Submitted by,**

106 E Sugarland Circle
Clewiston, FL 33440

561-574-2700